UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:12CR 120 SNLJ |
| | ) | |
| DAVID LEE GENTLES, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

The court adopts as its statement of facts the Factual Background provided by the government (Document #73) which is extensively supported by the record.

On May 16, 2012, Captain David Sutton of the Poplar Bluff Police Department (PBPD) received a referral (Government Exhibit, hereinafter "Gov.Ex.," 1) from Lt. Chris Mateja of the Missouri Internet Crimes Against Children Task Force that a Naval Criminal Investigative Services (NCIS) Special Agent was concerned that David Gentles of Leeper, Missouri, may be involved in the sexual exploitation of a child. (Motion to Suppress Transcript, (hereinafter "Tr." at 8-11). Lt. Mateja relayed that in March of 2012, the NCIS Agent (working in an undercover capacity) had posed as a 12-year-old girl (using the screen name "SunnySara12") and chatted with a person using the screen name "hellosweetdarlin." (Tr. 9-10). During the chat, "hellosweetdarlin" instructed "SunnySara12" on how to masturbate; "hellosweetdarlin" also stated that he had taught his 14-year-old daughter to masturbate. (Tr. 10). Lt. Mateja advised Captain Sutton that the NCIS Agent confirmed that the IP address used by "hellosweetdarlin" was assigned to David Gentles of Leeper, Missouri. Id.

In addition to the referral from Lt. Mateja, the information Captain Sutton received concerning the NCIS Agent's on-line chat with "hellosweetdarlin," included:

a)    a copy of the chat communication between the NCIS Agent acting as "SunnySara12" and "hellosweetdarlin" (Gov.Ex. 2);

b)    a disc containing a copy of the video file depicting the March 21, 2012 on-line session of the NCIS Agent that involved "hellosweetdarlin," see Gov.Ex. 3;

c)    a copy of a Subpoena sent to Windstream Communications from the National Center for Missing and Exploited Children (NCMEC) for information related to 173.186.193.43 (an Internet Protocol (IP) address) on March 21, 2012 at 15:06:39 EDT (Gov.Ex. 4 and 4A); and

d)    the administrative subpoena response from Windstream Communications indicated that David Gentles was the subscriber of the Internet Protocol (IP) address associated with "hellosweetdarlin" (Gov.Ex. 5).

(Tr. 11). Captain Sutton reviewed the video file depicting the on-line session between the NCIS Agent and "hellosweetdarlin," (Tr. 12) which occurred on March 21, 2012. (Tr. 14).

The information Windstream Communications provided in response to the NCMEC subpoena was faxed on May 8, 2012. (Tr. 16; Government Exhibit 5). Specifically, Windstream Communications' response included the following details:

a)    starting on March 19, 2012 at 22:22:45 and stopping on March 26, 2012 at 22:22:45, IP address 173.186.193.43 was assigned to David Gentles (Tr. 18);

b)    the username associated with David Gentles' account was "fcgc01" (Tr. 18);

c)    Gentles' "billing address" was P. O. Box 38, **Mill Springs, MO** 63952, with phone number 573-223-3229 (Tr. 18);

d)    Gentles' "address" was Route 3, Box 7292, Hwy 495 in **Looper, MO** 63957 (Tr. 18);

e)    the account type was DSL, starting September 5, 2008 (Tr. 19);

f)    the status of the account was "Active" (Tr. 19); and

g)      between May of 2011 and May of 2012 the bills paid by Gentles ranged from $177.82 up to $230.79; additional information was provided regarding dates of payments and the method Gentles used to make the payments (Tr. 19).

In regard to the addresses that Windstream Communications identified for David Gentles, Captain Sutton believed the reference to Looper should have been the town of Leeper, Missouri. (Tr. 19-20). Leeper and Mill Springs, Missouri, are located just over one mile apart. See, http://missouri.hometownlocator.com/mo/wayne/leeper.cfm.

The same day Captain Sutton received the NCIS Agent's referral via Lt. Mateja--May 16, 2012--Captain Sutton and PBPD Detective Keirsey traveled to the Wayne County Sheriff's Department (WCSD) to further the investigation. (Tr. 20-21). WCSD Sergeant Woody Massa indicated that he was familiar with David Gentles and advised that Gentles lived at 103-5th Street in Mill Spring, Missouri. (Tr. 20-21). Sergeant Massa added that he believed GEntles lived alone and that Gentles did not have young children. (Tr. 20). Although the WCSD authorities did not believe Gentles had a teenager living with him, Captain Sutton knew "that sometimes a suspect will try to engage a child in a conversation like this, will pretend to have a child, and they'll talk about how they have done this with ... children before and that they liked it." (Tr. 51). The officers then went to Gentles' 103-5th Street residence to talk to Gentles, but no one answered the door. (Tr. 21).

The next day, May 17, 2012, Captain Sutton communicated with the Wayne County Prosecutor about securing a search warrant for Gentles' residence. (Tr. 22). Captain Sutton prepared an affidavit regarding the referral from the NCIS Agent. (Tr. 22-23). The information Captain Sutton provided in the affidavit to support his belief that there was probable cause to search Gentles' 103-5th Street, Mill Spring residence, was as follows:

On 5-16-12 I received an Enticement of a Child complaint which was referred to

Missouri ICAC by the Naval Criminal Investigative Services (NCIS). The report related the following:

-In March 2012, NCIS Special Agent Steve Logan was involved in an undercover chat with an adult male suspect.

-SA Logan was posing (under cover) as a 12 year old female; this age was repeated by SA Logan a number of times.

-The suspect asked if she (SA Logan) wanted to see "one 9 inches long" (reference to a penis); asked if she wanted to learn how sex works; then instructed her to remove her clothes and provided step by step instructions on how to masturbate.

-During this chat, the suspect exposed his genitals and masturbated on webcam.

-The suspect added that he had given the same instruction to his 14 year old daughter.

-The suspect sent photos (to SA Logan) of a white female who he claimed was his daughter, Donna.

SA Logan obtained Internet Provider records (pursuant to a valid subpoena) which identified David Gentles in Mill Spring, Missouri, as the Internet service account holder.

(Government Exhibit 6, Affidavit; Tr. 22-23).

In addition, Captain Sutton attached screen captures of the on-line chat the NCIS Agent ("SunnySara12") had with "hellosweetdarlin" to the Affidavit. (Tr. 23, 60; Government Exhibit 6 reflects black and white copies that were faxed multiple times; Government Exhibits 6A and 6B are clean, color copies of the screen captures, Tr. 26-27). The text displayed in the screen captures (Government Exhibits 6A and 6B) provided corroboration that the chats between "hellosweetdarlin" and "SunnySara12" were sexual in nature, that "hellosweetdarlin" claimed to have a teenage daughter, and "hellosweetdarlin" transmitted images of himself masturbating to "SunnySara12." (Tr. 26-27). Captain Sutton created the screen shots that were attached to the search warrant affidavit around 10 a.m. on May 17, 2012, which was the same day he secured and executed the search

warrant at Gentles' residence.  (Tr. 61).  The webcam transmissions that were depicted in the screen captures attached to Captain Sutton's affidavit occurred on March 21, 2012 around 3 p.m.  (Tr. 29).

Wayne County Prosecutor Robert M. Ramshur signed off on the Search Warrant Application and Affidavit; a complete search warrant package was submitted to 42nd Judicial Circuit Judge Edith R. Rutter.  (Government Exhibit 6).  Judge Rutter signed the search warrant at 2:30 p.m., on May 17, 2012.  Id.  Captain Sutton believed there was probable cause to support the warrant.  (Tr. 23).

The search warrant was executed at Gentles' Mill Spring residence around 3 to 3:30 p.m. on May 17, 2012.  (Tr. 30).  No one was home and entry was made into the residence.  (Tr. 30-31).  The items seized pursuant to the warrant, included:

a)      a red Gateway laptop computer;

b)      a black Fuji Film digital camera;

c)      a sheet of paper with notes; and

d)      a Maxwell CDR 700MB.

(Tr. 31-32).  Officers took photographs, including pieces of mail addressed to Gentles and other items that Captain Sutton observed in the webcam transmission between "hellosweetdarlin" and "SunnySara12."  (Government Exhibits 9-11).

After executing the search warrant, Captain Sutton acquired a phone number for Gentles, called the number, and left a voice mail for Gentles.  (Tr. 35).  Shortly thereafter, Gentles returned the call and agreed to meet with Captain Sutton at his 103-5th Street residence in Mill Spring.  (Tr. 35, 37).

Captain Sutton and Officer Steve McCane arrived at Gentles' residence at approximately 7:00 p.m.  (Tr. 35).  Gentles greeted the officers at the door and led them inside.  Captain Sutton advised

Gentles of the <u>Miranda</u> warning and Gentles stated that he understood his rights. Captain Sutton explained that they had seized Gentles' laptop earlier that day and wanted to talk to him about it. <u>Id</u>.

In response, Gentles claimed that there was a virus on his computer and that his webcam would turn on without warning. (Tr. 35). Captain Sutton advised Gentles that based on what he knew that couldn't be true. At that point, Gentles stated that he believed he needed an attorney. Captain Sutton terminated the interview. Captain Sutton assured Gentles that he would still like to talk to Gentles after Gentles hired an attorney. Captain Sutton requested that Gentles ask his attorney to call him to make arrangements for an interview. <u>Id</u>.

Before leaving, Captain Sutton took a photograph of Gentles sitting on his living room couch. (Tr. 36, 57; Government Exhibit 7). Captain Sutton took the photograph for comparison to the video of the on-line chat between "hellosweetdarlin" and "SunnySara12," because the couch was similar to the couch that appeared in the March 21, 2012 webcam transmission. (Tr. 36). Captain Sutton did not ask for Gentles' permission to take the picture, but believed he probably explained what he was doing. (Tr. 57-58). Gentles did not tell Captain Sutton to not take the picture. (Tr. 65). Captain Sutton testified that "[t]here was nothing about his statements or his demeanor that made me think he didn't want us to take a picture." <u>Id</u>.

On May 23, 2012, PBPD Detective Greg Brainard applied for and received a search warrant to examine the computer related items that had been seized from Gentles' residence. (Tr. 37). The search warrant was secured so that Detective Brainard could examine Gentles' computer. <u>Id</u>.

Gentles is charged with one count of Attempting to Transfer Obscene Matter to an individual less than sixteen years old via the Internet on or about March 21, 2012, in violation of 18 U.S.C. §1470. (Document #2). Specifically, the indictment alleges that Gentles "direct[ed] a girl he believed

was twelve years old to view live video from his web cam, which depicted an adult male exposing his erect penis." Id.

The defendant, David Lee Gentles, through his attorney, Stephen C. Wilson, has filed Defendant's Motion to Suppress Evidence (Document #57). In the motion to suppress, the defendant lists the following items as evidence which he seeks to have the court suppress:

1.      Red Gateway laptop computer, serial number 91501214825

2.      Black Fuji film camera #1WC60490

3.      Sheet of paper with notes

4.      Maxell CD-R 700 MB

5.      Photographs taken on or about May 17, 2012 inside of a residence

        at 103 5th Street, Mill Spring, Missouri.

As the defendant points out, each of the above listed items was seized pursuant to a search warrant issued by the Circuit Court of Wayne County, Missouri, on or about May 17, 2012, and was seized during the execution of the search warrant at 103 5th Street, Mill Spring, Missouri.

The defendant further seeks to have suppressed a photograph of the defendant seated on a couch inside the residence at 103 5th Street, Mill Spring, Missouri, which was taken by a law enforcement officer on a date after May 17, 2012, and which defendant alleges was taken without permission.

The defendant further seeks to have suppressed any electronic data, logs, photographs or materials of any kind obtained by the government during a subsequent forensic search of the red Gateway laptop computer, Fuji film camera and the Maxell CD-R 700 MB tape, which may have been

obtained pursuant to a search warrant issued by the Butler County Circuit Court on or about May 22, 2012.

The defendant, in his motion, provides the following factual background:

The incident giving rise to this search apparently occurred sometime in March, 2012, involving an NCIS Special Agent Steve Logan, who was involved in an undercover chat with what purported to be an adult male suspect. It appears that agency followed up from that chat and developed an IP address of 173.186.193.43. Thereafter, a subpoena was served on an internet provider named Windstream Communications, Inc., located in Little Rock, Arkansas. The internet provider, pursuant to subpoena, provided three pages of documents with reference to the IP address set forth above. Using that information, David Sutton, an employee of the Poplar Bluff Police Department, applied for and received a search warrant in Wayne County, Missouri.

## Probable Cause

The United States Supreme Court has defined probable cause to search as "a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332 (1983).

The standard to be used by a judge reviewing the decision to issue a search warrant is different from the standard to be used by the judge who issues the search warrant. As the Supreme Court stated in Gates more fully, Id.:

The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay

information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed. Jones v. United States, 362 U.S., at 271, 80 S.Ct., at 736.

The Supreme Court rejected the prior tests required by Spinelli v. United States, 393 U.S. 410, 898 S.Ct. 584 (1969), finding that "the complex superstructure of evidentiary and analytical rules that some have seen implicit" in the Spinelli decision cannot be reconciled with the fact that many warrants quite properly are "issued on the basis of non-technical, common sense judgments of laymen applying a standard less demanding than those used in more formal legal proceedings." Id. at 235, 2331. The Court offered the following caution to reviewing courts, Id. at 236, 2331:

> Similarly, we have repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review. A magistrate's "determination of probable cause should be paid great deference by reviewing courts." Spinelli, supra, 393 U.S., at 419, 89 S.Ct., at 590. "A grudging or negative attitude by reviewing courts toward warrants," Ventresca, 380 U.S., at 108, 85 S.Ct., at 745, is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant; "courts should not invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a common sense, manner." Id., at 109, 85 S.Ct., at 746.

> Probable cause is

> a fluid concept--turning on the assessment of probabilities in particular factual contexts--not readily, or even usefully, reduced to a neat set of legal rules. Informants' tips doubtless come in many shapes and sizes from many different types of persons. As we said in Adams v. Williams, 407 U.S. 143, 147, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972): "Informants' tips, like all other clues and evidence coming to a policeman on the scene, may vary greatly in their value and reliability." Rigid legal rules are ill-suited to an area of such diversity.

Gates, 462 U.S. at 232, 103 S.Ct. at 2329.

The Supreme Court found, 462 U.S. at 231, 103 S.Ct. at 2328, quoting from Brinegar v. United States (citation omitted), that the probable cause standard is a "practical, nontechnical

conception" and "In dealing with probable cause, ... as the very name implies, we deal with probabilities. These are not technical; they are the factual considerations of everyday life on which reasonable and prudent men, not legal technicians, act."

As the Supreme Court stated in <u>Gates</u>, our review of the sufficiency of the affidavit should not take the form of a <u>de novo</u> review.

Judges may draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists to issue a warrant. <u>United States v. Wallace</u>, 550 F.3d 729, 732 (8th Cir. 2008).

The defendant sets out the grounds for suppression of the above items seized pursuant to the search warrant in four paragraphs listed as a., b., c. and d.. (Document #57, pp. 3-4). The court will consider each of these grounds in turn.

<u>I</u>

The defendant lists his first ground as <u>a. The application requesting the search warrant identifies the place sought to be searched as "the residence of David Gentles, described as a white sided, single story, wood frame building located at 103 5th Street in Mill Spring, Missouri." No facts are alleged in the application to support the claim that the building at 103 5th Street, Mill Spring, Missouri, is the residence of David Gentles.</u>

In the above ground, the defendant argues that no facts are alleged in the application to support the claim that the building at 103 5th Street, Mill Spring, Missouri, is the residence of David Gentles. It is true, as the defendant points out, the application and affidavit do not present facts showing that the address, 103 5th Street, in Mill Spring, Missouri, is the address of the defendant.

Usually when a search warrant is sought, the address is a given. The question is not whether

the address in the application and affidavit is the address of the subject, but whether the affidavit shows probable cause that a search warrant should issue because of criminal activity or evidence of criminal activity is which present at the location described in the application and affidavit.

In the application, Captain David Sutton of the Poplar Bluff Police Department states under oath that he is asking the judge to issue "a search warrant, to search the following described person, place, or thing: The residence of David Gentles, described as a white sided, single story, wood frame building located at 103 5th Street in Mill Spring, Missouri;"

In the above words, Captain Sutton is telling Judge Rutter that the 103 5th Street address in Mill Spring, Missouri, is the residence of David Gentles.

The affidavit of Captain Sutton states that he has probable cause to believe that the listed property to be search for and seized, photographed, or copied, is now located upon said described person, place or thing; based upon the following facts, to-wit:

On May 16, 2012, Officer Sutton received an Enticement of a Child complaint which was referred to the Missouri Internet Crimes Against Children Task Force by the Naval Criminal Investigative Services providing the following information: In March, 2012, NCIS Special Agent Steve Logan was involved in an undercover chat with an adult male suspect. Logan was posing (undercover) as a 12-year-old female and the age of 12-year-old was repeated by Special Agent Logan a number of times; the suspect asked if she (Logan) wanted to see "one nine inches long" (reference to a penis); the suspect asked if she wanted to learn how sex works; then instructed her to remove her clothes and provided step-by-step instructions on how to masturbate; during the chat, the suspect exposed his genitals and masturbated on the webcam; the suspect added that he had given the same instruction to his 14-year-old daughter; the suspect sent photos to Special Agent Logan of

a white female who he claimed was his daughter, Donna.

Officer Sutton stated further in the affidavit that Special Agent Logan obtained Internet Provider records (pursuant to a valid subpoena) which identified David Gentles as the Internet service account holder.

According to Government's Exhibit #1, the referral from the Missouri Internet Crimes Against Children Task Force, Lt. Chris Mateja, of the Missouri Internet Crimes Against Children Task Force, actually stated the IP address used by the subject was identified as belonging to David Gentles of Leeper, Missouri. The Internet Provider's records identified David Gentles as the Internet service account holder and listed two billing addresses in the following manner:

| Username | Name | Billing Address | City/State/Zip | Phone |
|----------|------|-----------------|----------------|-------|
| fogo01 | David Gentles | PO Box 38 | Mill Springs, MO 63952 | 573-223-3229 |
| | | **Address** | **City/State/Zip** | |
| | | Rt 3 Box 7292 | Looper, MO 63957 | |
| | | Hwy 495 | | |

The Internet Provider did not attach a date to either of the billing addresses to show when they were the valid addresses of David Gentles. Officer Sutton put in the affidavit the address of David Gentles as located at 103 5th Street in Mill Spring, Missouri, which Sutton was informed by sources in Wayne County, Missouri, was the correct location where Gentles lived. The affidavit did not mention the Wayne County sources.

There is no question that the internet chat described in the affidavit was a conversation of a sexual nature containing both language and actions between the subject identified as Gentles and a person he believed to be a minor female and constituted criminal activity. Officer Sutton does not provide in his application/affidavit the source of his knowledge of Gentles's residence as being 103 5th Street in Mill Spring. That omission does not make that information any the less accurate and

correct.

In a preview of its precedent-setting holding in the <u>Gates</u> decision, the Supreme Court, in

<u>United States v. Ventresca</u>, 380 U.S. 102, 85 S.Ct. 741 (1965), after reviewing its earlier court

decisions considering the sufficiency of showings of probable cause stated:

> These decisions reflect the recognition that the Fourth Amendment's
> commands, like all constitutional requirements, are practical and not abstract. If the
> teachings of the Court's cases are to be followed and the constitutional policy served,
> affidavits for search warrants, such as the one involved here, must be tested and
> interpreted by magistrates and courts in a commonsense and realistic fashion. They
> are normally drafted by nonlawyers in the midst and haste of a criminal investigation.
> Technical requirements of elaborate specificity once exacted under common law
> pleadings have no proper place in this area. A grudging or negative attitude by
> reviewing courts toward warrants will tend to discourage police officers from
> submitting their evidence to a judicial officer before acting.

380 U.S. at 108, 85 S.Ct. at 746.

The application and affidavit of Officer Sutton provided the information necessary for a

finding of probable cause. It identified the place to be searched as the residence of David Gentles.

It listed what was to be searched and seized. It provided information concerning activities that were

criminal in nature, providing a third element of probable cause. In accordance with the reviewing

court's duty under <u>Gates</u>, this court finds that Judge Rutter had a "substantial basis for ... concluding"

that probable cause existed for the issuance of the search warrant. <u>Gates</u>, 462 at 238, 103 S.Ct. at

2332.

## <u>II</u>

Defendant's second ground listed is <u>b. The search warrant application states "SA Logan</u>

<u>obtained internet provider records (pursuant to a valid subpoena) which identified David Gentles in</u>

<u>Mill Spring, Missouri, as the internet service account holder." The internet provider records in the</u>

- 13 -

hands of the Government agents seeking the search warrant **do not** identify the address 103 5th Street, Mill Spring, Missouri.  Such records give only one physical address, that being Route 3, Box 7292 Highway 495, Looper, MO 63957.  Such documents identify a particular internet service recipient as David Gentles, but show a P. O. Box in Mill Spring, Missouri, along with the Looper, Missouri, physical address.

Again, the defendant is correct; however, the basis for Officer Sutton's reference to the 103 5th Street, Mill Spring, Missouri, as the residence address of David Gentles will become clear when this court takes up the Good Faith exception to the warrant requirement in the section dealing with Leon.

### III

c.  The application supporting the issuance of the search warrant is devoid of anything which would constitute a factual basis to determine probable cause existed at the time the warrant was issued to believe that contraband or evidence of a crime would be found at 103 5th Street, Mill Spring, Missouri.

The court believes this is basically the same argument as stated in I paragraph a. Besides what paragraph a. argues, that there is not a factual basis to determine that contraband or evidence of a crime would be found at 103 5th Street, Mill Spring, Missouri, defendant has added in c. the argument that the application/affidavit is devoid of facts providing the issuing judge with probable cause at the time the warrant was issued to believe that contraband or evidence of a crime would be found at 103 5th Street.  This, too, was discussed earlier.  The graphic recitation of the sexual actions and speech attributed to Defendant Gentles certainly showed that criminal activity was taking place.  By asking for a warrant to search David Gentles's home, Sutton was telling the judge, "Evidence of

a crime would be at Gentles's residence." Besides the statements in the application/affidavit of

Officer Sutton, submitted with the affidavit and application were portions of the online chat that took

place between the Naval Criminal Investigative Services agent (sunnysara12) and "hellosweetdarlin."

In addition, pictures of the person "hellosweetdarlin" claimed to be his teenage daughter and images

of himself, naked, exposing himself and masturbating were submitted with the application/affidavit,

leaving no doubt that evidence of the commission of a crime was submitted to Judge Rutter.

As the government points out (Document #73, p. 12), the Eighth Circuit is among a number

of circuits that have concluded "the nexus between the place to be searched and the items to be seized

may be established by the nature of the items and the normal inferences of where one would likely

keep such evidence." United States v. Anderson, 851 F.2d 727, 729 (4th Cir. 1988) ("It was

reasonable for the magistrate to believe that the defendant's gun and the silencer would be found in

the residence .... even though the affidavit contained no facts that the weapons were located in the

defendant's trailer ...." Id.). United States v. Cowling, 648 F.3d 690, 696 (8th Cir. 2011)("Because

the warrant affidavit established probable cause that Cowling possessed stolen firearms, it follows that

probable cause existed to search Cowling's residence because people 'generally keep [firearms] at

home or on their persons.' citing United States v. Stevens, 525 F.2d 33, 38 (8th Cir. 1975)." In

another case the Court held:

> Although it is well established that a judge may draw reasonable inferences
> from the totality of the circumstances in determining whether probable cause exists
> to issue a warrant, see United States v. Sundby, 186 F.3d 873, 875-76 (8th Cir.
> 1999); Mahler, 141 F.3d at 814, we have also recognized that law enforcement
> officers may make reasonable inferences in preparing affidavits in support of a
> warrant, see United States v. Callison, 577 F.2d 53, 54-55 (8th Cir. 1978) (upholding
> search warrant based on affidavit of officer who reasonably inferred that defendant
> whose car was searched was a robbery suspect); cf. United States v. Fahsi, 102 F.3d
> 363, 365 (8th Cir. 1996) (officers' determination of probable cause to make

warrantless arrest "requires officers to make reasonable inferences from facts known to them"); United States v. Sherrill, 27 F.3d 344, 347 (8th Cir. 1994).

United States v. Thompson, 210 F.3d 855, 860 (8th Cir. 2000).

To paraphrase what the Court said in United States v. Cowling, above, and applying it to Mr. Gentles, "Because the warrant affidavit established probable cause that Gentles had engaged in sexual conversation and actions on his computer with a person he believed to be a twelve-year-old, it follows that probable cause existed to search Gentles's residence because people 'generally keep computers at home....'"

The reported conversation that took place on March 21, 2012, between "hellosweetdarlin" and "SunnySara12" certainly provided a factual basis that criminal activity took place. The request to search 103 5th Street to find evidence of that activity by inference in telling Judge Rutter that it was at that address that the criminal activity originated.

## IV

d. The activity described in the warrant/application giving rise to the Government's inquiry occurred in March, 2012 (no specific date given). The search warrant was issued 2 months later on May 17, 2012, and defendant suggests that this significant lapse of time further diminishes probable cause to believe that contraband or evidence of criminal activity would be found at the target location of the search warrant.

In United States v. Chrobak, Judge Lay of the Eighth Circuit Court of Appeals reviewed the affidavit of Special Agent Jill Hill, Coordinator of the FBI's Crimes Against Children Office in Little Rock, Arkansas. Agent Hill included in her affidavit that child pornographers "almost always maintain and possess their materials in a place considered secure due to its inherent illegality." Judge

Lay wrote:

> Chrobak's staleness argument also falls short. There is no bright line test for staleness. United States v. Koelling, 992 F.2d 817, 822 (8th Cir. 1993). Agent Hill provided credible testimony from her professional experience that child pornographers generally retain their pornography for extended periods. On this basis, a magistrate judge could find a fair probability that Chrobak had child pornography at his home three months after the intercepted transfer. The magistrate judge also had to consider that the information had to pass from New York to Arkansas; Agent Hill had to independently verify the content of the images, the sender, and Chrobak's address; and Agent Hill had to coordinate the warrant with the nationwide operation against Pedo University. We hold the warrant was supported by probable cause.

Chrobak, 289 F.3d at 1046.

Earlier in the Chrobak opinion, the question arose of a necessary nexus between the suspect and the internet name used by the suspect "by providing evidence that the name was registered to him." Agent Hill also established a "sufficient nexus between the transfer and the suspect's house by providing evidence that he lived there and that, in the agent's experience, pedophiles maintain their child pornography in a secure place." As Judge Lay explained:

> Further, "[t]he source and credibility of evidence in support of a warrant request is considered in the totality of the circumstances analysis, and a warrant is proper so long as the evidence as a whole creates a reasonable probability that the search will lead to the discovery of evidence." Id. at 786 (quoting United States v. Humphrey, 140 F.3d 762, 764 (8th Cir. 1998)). Agent Hill established a sufficient nexus between Chrobak and the internet moniker by providing evidence that the name was registered to him. She also established a sufficient nexus between the transfer and Chrobak's house by providing evidence that he lived there and that, in her experience, pedophiles maintain their child pornography in a secure place.

289 F.3d 1046.

All the elements which Judge Lay found supported the validity of the search warrant in Chrobak were present in the application/affidavit of Officer Sutton. The application/affidavit and the materials supplied with the application/affidavit provide the nexus between Gentles and

"hellosweetdarlin."  Also, the application/affidavit and materials supplied with the affidavit provided the nexus between the internet transmission of pornography and his home by providing evidence that he lived there.

With reference to the defendant's argument set out in IVd., that the issuance of the search warrant two months after information was first sent to Officer Sutton, was such a significant lapse of time that the probable cause was diminished.  Judge Lay addressed that issue in the portion of the Chrobak decision quoted above.  289 F.3d at 1046.  The Chrobak decision concluded that three months was not too long to affect the judge's finding of probable cause.

For instance, the subpoena to Windstream Communications, Inc. was issued on April 11, 2012 (Government's Exhibit #4), but the information requested in the subpoena was not faxed to Internet Security until May 8, 2012 (Government's Exhibit #5).

The information was sent to Lt. Sutton on May 10, 2012 (Government's Exhibit #1), the application for the search warrant was made on May 17, 2012, the warrant was issued that same date and executed that same date, May 17, 2012 (Government's Exhibit #6), with the return being made on May 24, 2012 (Government's Exhibit #6, p. 2).

In United States v. Koelling, 992 F.2d 817, 823 (8th Cir. 1993), the Court referred to United States v. Rabe, 848 F.2d 994, 997 (9th Cir. 1988), which held in part on expert opinion that pedophiles collect materials for years and based in part on knowledge of the defendant's receipt of child pornography in 1984, a search warrant issued in 1986 was not based on stale information. Koelling, 992 F.2d at 823.

The court finds a time period of two months in the instant case between the communication between "hellosweetdarlin" and "SunnySara12" and the issuance of the warrant did not affect the

reliability of the information in the application/affidavit to diminish the probable cause necessary to issue the warrant. The information was not "stale."

## Good Faith

In case a higher court should disagree with this court's opinion that the application/affidavit and other material given to Judge Rutter state probable cause for the issuance of the search warrant, the validity of the search warrant and the admissibility of the items seized as a result of the search warrant are protected by the "Good Faith" exception to the warrant requirement. United States v. Leon, 468 U.S. 897. Leon held that evidence obtained in violation of the Fourth Amendment by officers acting in objectively reasonable reliance on the search warrant issued by a neutral and detached magistrate need not be excluded as a matter of law. Id. Captain Sutton testified he believed there was probable cause to support the issuance of the warrant. (Tr. 23). "In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the evidence of probable cause." Id. at 926. The defendant objects to the last sentence on the first page of the affidavit/application which states that "Special Agent Logan obtained Internet Provider records (pursuant to a valid subpoena) which identified David Gentles in Mill Spring, Missouri, as an internet service account holder." The defendant objects to the part of the statement which says the Internet Provider records identified David Gentles in Mill Spring, Missouri, as the internet service account holder because that was one of the addresses given for Mr. Gentles, not the sole address. No Franks hearing was requested and would have been ineffective to defeat the validity of the search warrant in that if the warrant's listing Mill Spring, Missouri, were left out of that statement, it would still have related that Internet Provider records identified David

Gentles as the internet service account holder. Elsewhere in the affidavit/application, Officer Sutton asked for a search warrant to search the residence of David Gentles and then the address at 103 5th Street in Mill Spring, Missouri, is given. There is no evidence to suggest that the four circumstances when the <u>Leon</u> Good Faith exception does not apply occurred: (1) when the issuing judge is misled by information in the affidavit the affiant knows or should know is false; (2) when the issuing judge completely abandons his judicial role; (3) when the affidavit includes so little indicia of probable cause that official belief in its existence is entirely unreasonable; and (4) when the warrant is so facially deficient that the executing officer cannot reasonably presume it to be valid. <u>Leon</u>, 468 U.S. at 923. "An officer executing a search warrant may rely on the permissibility of the issuing judge's inference that such a nexus exists." In <u>United States v. Proell</u>, 485 F.3d 427, 431 (8th Cir. 2007), the Court stated, "When assessing the objective [reasonableness] of police officers executing a warrant, we must look to the totality of the circumstances, including any information known to the officers but not presented to the issuing judge."

In this instance, Captain Sutton and Poplar Bluff Police Department Detective Keirsey traveled to the Wayne County Sheriff's Department to further the investigation. Sgt. Woody Massa of the Wayne County Sheriff's Department indicated to Sutton and Keirsey that he was familiar with David Gentles and advised that Gentles lived at 103-5th Street in Mill Spring, Missouri. (Tr. 20-21). Sgt. Massa added that he believed Gentles lived alone and that Gentles did not have young children. The officers went to Gentles's 103-5th Street residence to talk to Gentles, but no one answered the door. Captain Sutton was able reasonably to rely on the information Sgt. Massa provided to him about the location of Gentles's home. "Observations of federal officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their

number." United States v. Ventresca, 380 U.S. 102, 111, 85 S.Ct. 746, 747 (1965). Sutton sought the search warrant and executed it on May 17, 2012. After executing the search warrant, Captain Sutton acquired a phone number for Gentles and called the number but had to leave a voice mail for Gentles. Gentles returned the call and agreed to meet with Captain Sutton at the 103-5th Street residence in Mill Spring. (Tr. 35, 37). Sutton advised Gentles of the Miranda warnings, and Gentles said he understood his rights. When Gentles stated he believed he needed an attorney, Captain Sutton terminated the interview. Then Captain Sutton took a photograph of Gentles sitting on his living room couch. At the evidentiary hearing, Sutton testified he took the photograph for comparison of the video of the online chat between "hellosweetdarlin" and "SunnySara12" because the couch was similar to the couch that appeared in the March 21, 2012, webcam transmission. (Tr. 36). Sutton did not ask for Gentles's permission to take the picture but believed he probably explained what he was doing. (Tr. 57-58). Sutton testified that Gentles did not tell him (Sutton) to not take the picture. (Tr. 65). Sutton testified that "there was nothing about his statements or his demeanor that made me think he didn't want us to take a picture." Id.

On cross-examination, Sutton testified that he did not recall exactly what his words were with Gentles concerning a photograph. He said, "I do know that as a rule when I take a picture of a person I will explain what I am doing. I'll say I am going to take a picture of you, and I'll take the picture." (Tr. 57). He had acknowledged that "I have no specific memory of our conversation at that point, but I'm sure that as a rule I would say, I'm going to take a picture of you, or I'm just going to take a quick picture." (Tr. 57-58). Sutton testified that he did not know for sure what he said about taking a picture. (Tr. 58). He did say that he did not ask Gentles's permission and Gentles did not say it was okay. (Tr. 58).

On redirect, Sutton said that Gentles did not say it was okay to take the picture. He did not tell Sutton that it was not okay to take the picture. (Tr. 65).

David Gentles testified that when Sutton was asking questions, he was really nice. Then they reached a point where Gentles said, "We are done. We will do nothing else without legal counsel." (Tr. 69). Asked what happened after that by his attorney, Gentles testified, "He got mad and he stood up and snapped a picture of me." Gentles was asked, "Did he ask your permission to take that photograph of you?" and Gentles replied, "No, he did not." Gentles was asked, "Had he asked your permission to take that photograph, would you have granted it?" Gentles replied, "No."

The defendant asks in his motion and memorandum that the photograph of himself on the couch be suppressed. He asks also that a photograph of the shirt similar to the shirt Gentles allegedly was wearing during the conversation with "sunnysara12" be suppressed.

The court notes that the search warrant issued by Judge Rutter lists the white shirt depicted in the screen capture as an item to be seized as requested by Officer Sutton in his affidavit/application.

The order part of the search warrant required that the property described above be searched and if any of the described property or any part thereof be found on said persons, place or thing, that said property be seized or photographed and that a copy of said photograph be brought to the judge who issued the warrant. (Government's Exhibit #6, p. 4). The couch does appear in Government's Exhibits #7, #9 and #10. It also is shown in Government's Exhibits #6A and #6B which show part of the person engaged in the exchange with "sunnysara12." Those pictures also show a white t-shirt. The white t-shirt was photographed by the officers during the execution of the search warrant and displayed in Government's Exhibit #11.

The court finds that in view of the order by Judge Rutter that property described in the

warrant be seized or photographed, the photographs of the couch, including Government's Exhibit #7 which shows Mr. Gentles on the couch and the photograph of the white t-shirt depicted in Government's Exhibit #11 as well as the other pictures taken during the execution of the search warrant and on the next day should not be suppressed.

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Evidence (Document #57) be denied.

The parties are advised that they have fourteen (14) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. <u>Thompson v. Nix</u>, 897 F.2d 356 (8th Cir. 1990).

LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE

Dated this 28th day of February, 2014.